# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

|  |  |  |
|---|---|---|
| DESIREE LATRICE KINSEY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:16-CV-69-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Desiree Latrice Kinsey on February 23, 2016, and Plaintiff's Brief [DE 16], filed by Plaintiff on June 21, 2016. Plaintiff requests that the October 30, 2015 decision of the Administrative Law Judge denying her claim for supplemental security income be reversed and remanded for further proceedings. On September 27, 2016, the Commissioner filed a response, and Plaintiff filed a reply on October 18, 2016. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed her initial application for supplemental security income on October 14, 2009, alleging disability since November 1, 2008. The claim was denied initially and on reconsideration, and she requested a hearing, which was held before ALJ Romona Scales (ALJ) on January 4, 2011. On March 18, 2011, the ALJ issued an unfavorable decision. On March 22, 2012, the Appeals Council declined Plaintiff's request for review, making the ALJ's denial the final decision of the Commissioner. Plaintiff filed an appeal with this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c). On September 30, 2013, the undersigned reversed and remanded the case for a new hearing. On April 23, 2014, the Appeals Council remanded the case. A new hearing was held before ALJ Scales

on August 11, 2015. On October 30, 2015, the ALJ issued an unfavorable decision, making the

following findings:

1. The claimant has not engaged in substantial gainful activity since October 14, 2009, the application date.

2. The claimant has the following severe impairments: history of carotid artery aneurysm, with surgery; vision loss, right eye; and palsy of the right nerve.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant is never to crawl, kneel, or climb ladders, ropes, or scaffolds; the claimant's work must be without requirement of balance; the claimant is limited to no more than occasional stooping, crouching, crawling, or the climbing [of] ramps and stairs; the claimant is limited to no more than frequent bilateral handling, fingering, and reaching in all directions; the claimant is limited to no more than frequent operation of foot controls; the claimant is limited to no more than occasional exposure to extreme cold, humidity, wetness, and vibration; the claimant is never to be exposed to dusts, fumes, odors, gases, poor ventilation, and extreme heat; the claimant's work must not require fine, precise, or detailed visual acuity of small/microscopic objects; the claimant can exercise near and far acuity; the claimant can see and handle medium to large objects; the claimant can avoid work place hazards; the claimant requires a cane for balance and/or ambulation.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born [in 1975] and was 34 years old, which is defined as a younger individual age 18-44, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, from October 14, 2009, the date the application was filed.

(AR 555-67).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not

whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the

burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and an award of benefits or, alternatively, remand for further proceedings, arguing that (1) the ALJ violated the law of the case doctrine by failing to discuss Plaintiff's headaches as ordered on remand; (2) the ALJ's analysis of Plaintiff's multiple sclerosis diagnosis was legally insufficient and the conclusion that it was not a medically determinable impairment was not supported by substantial evidence; (3) the RFC assessment is not supported by substantial evidence; (4) the ALJ failed to acknowledge and weigh Plaintiff's treating physician's opinion; and (5) the ALJ's credibility assessment was legally insufficient. The Court considers each argument in turn.

## A. Law of the Case - Headaches

In its September 30, 2013 Opinion and Order remanding this case on its first appeal, this Court held that the ALJ failed to properly analyze Plaintiff's documented headache diagnosis and pain in violation of SSR 96-8p and directed the ALJ, on remand, to provide the proper analysis. (AR 703-06). Inexplicably, the ALJ has failed to do so.

In the 2013 Opinion and Order, the Court detailed the requirements of SSR 96-8p, including that the RFC assessment must be based on all of the relevant evidence in the record and that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. The Court further noted that, with regard to symptoms, the RFC assessment must contain a thorough discussion and analysis of the medical evidence, include a resolution of any inconsistencies in the evidence, and set forth a logical explanation of the effects of the symptoms on the individual's ability to work. (AR 702-03

(quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996))). The Court found that the three instances in which the ALJ mentioned Plaintiff's headaches were "void of any attempt to thoroughly discuss or analyze the evidence as required by SSR 96-8p." (AR 1675).

In the instant decision under review, the ALJ commits the same error. First, the ALJ did not acknowledge Plaintiff's headaches when determining which impairments were medically determinable and whether they were severe or non-severe at step two of the sequential analysis. (AR 555-58). The ALJ identified Plaintiff's severe impairments as history of carotid artery aneurysm, with surgery; vision loss, right eye; and palsy of the right nerve. (AR 555). In addition, the ALJ considered that Plaintiff had the "non-severe" medically determinable impairments of a spinal disorder and depression. Finally, the ALJ found that Plaintiff's multiple sclerosis was not a medically determinable impairment. The ALJ does not discuss Plaintiff's headaches at step two.

Nor did the ALJ conduct a proper analysis of Plaintiff's headaches in the determination of the RFC. After setting out the full RFC assessment, the ALJ acknowledged Plaintiff's reported symptoms: "The claimant has alleged symptoms consistent with the aforementioned impairments, including poor or blurred vision, headaches, vomiting, eye pain, blackouts, incontinence, numbness in the hands and feet, involuntary movements of the extremities, poor balance, poor memory, dizziness, weakness in her legs, excessive sleep, body aches, and functional postural difficulties (lift, squat, bend, stand, reach, walk, sit, kneel, and climb)." (AR 559). The ALJ found generally that "a careful review of the record reveals that the claimant's impairments do not prevent her from working at jobs consistent with the [RFC] as found herein." *Id*.

However, the only subsequent discussion of headaches is in the context of the credibility determination. The ALJ found that Plaintiff's subjective statements overall are "less than reliable" (AR 560) and gave an example that

the claimant reported in June 2010 that she is without headache free days (Exhibit 9E). However, other self-submitted reports do report headache free days (Exhibit 1E) and the claimant's record contemporaneous with said reports document treatment visits that fail to indicate contemporaneous headache complaints or the acute distress documented in the claimant's self-submitted headache questionnaires (Exhibit 22F/4; 8F/3,7; 13F; 9E, 1E). Therefore, the claimant's reports as to more or less constant headache appear to be exaggerated complaints of symptomology and are afforded little weight.

(AR 560). This reference to headaches in the context of the overall credibility determination does not satisfy the purpose of the remand ordered by this Court. It is specious for the Commissioner to argue otherwise.

Even if it were reasonable to discredit Plaintiff's reports of "constant" headaches on this basis (which the Court finds it was not for the reasons provided in Part E below), the ALJ was required to analyze the evidence of headaches and to determine the extent of the headaches and the effect upon Plaintiff's ability to sustain work-related activity. *See* SSR 96-8p. As noted by Plaintiff, the record contains Plaintiff's numerous reports of headaches/migraines. *See* (AR 278 (11/10/2009), 280 (2/2/2010), 295 (2/16/2010), 408 (11/12/2010), 469 (11/13/2008), 521 (12/21/2010; headaches occurring daily), 525 (11/23/2010; two weeks post operative), 534 (1/5/2010), 535 (9/18/2009), 970 (1/30/2013; chief complaint migraine), 987 (2/2/2013), 990 (2/4/2013), 994 (2/5/2013), 1008-12 (1/30/2013-2/6/2013), 1019 (2/6/2013), 1041 (1/7/2012; reporting headaches for two years since having a cerebral aneurysm repaired), 1048 (1/7/2012), 1053 (1/7/2012), 1055 (1/8/2012), 1079 (2/6/2013), 1084 (2/4/2013), 1164 (3/31/2011), 1168 (4/3/2011), 1199 (1/2/2012), 1217 (5/14/2013; noting that Plaintiff developed sever migraine headaches in January 2013, was refereed to NUS and Neuroradiology for further treatment/management, and was scheduled for aneurysm clipping), 1242 (5/17/2013), 1300 (6/7/2013; noting that Plaintiff still had headaches), 1309 (6/11/2014), 1314 (12/5/2012), 1321 (1/30/2013), 1327 (4/3/2013), 1343 (5/8/2013), 1355 (3/10/2104), 1357 95/12/2014), 1361 (11/13/2014; "patient has right side headaches and the back of the head that feels

like a stabbing pain"), 1407 (11/7/2011), 1418 (4/12/2012), 1431 (7/31/2012), 1439 (8/27/2012), 1456 (1/25/2013), 1477 (5/6/2014), 1489 (7/10/2014; reason for visit is headache), 1508 (2/25/2013), 1516 (4/9/2013), 1540 (8/23/2013), 1545 (10/2/2013), 1552 (8/7/2014), 1564 (9/9/2014; chief complaint headache), 1575 (10/10/2014; reason for visit migraine, "headaches ongoing"), 1587 (12/9/2014), 1597 (12/29/2014)). Plaintiff was also diagnosed with headaches. *See* (AR 534 (1/5/2010), 1047 (2/14/2012), 1054 (1/9/2012), 1317 (12/5/2012), 1364 (11/13/2014)).

Yet the ALJ did not identify or discuss any of these records to determine whether Plaintiff's headaches were severe and whether she would suffer limitations from the headaches. The ALJ also did not evaluate the frequency, duration, intensity, or aggravating or relieving mechanisms of Plaintiff's headaches. *See Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014); *Shauger v. Astrue*, 675 F.3d 690, 697-98 (7th Cir. 2012); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

Finally, as the Commissioner notes, the ALJ mentioned the testimony of the independent medical expert, Dr. Manders, in relation to Plaintiff's headaches. First, this discussion is in a footnote, a fact omitted by the Commissioner. *See* (AR 560 n. 4). Second, it is a footnote to the credibility determination. Third, in the footnote, the ALJ lists two points made by Dr. Manders in his testimony, neither of which illuminates the origin of Plaintiff's headaches, her related symptoms, or any resulting functional limitations. First, the ALJ commented that Dr. Manders testified that "objective diagnostic testing failed to document microvascular abnormality that might support such symptomology." (AR 560, n. 4). At the hearing, the ALJ asked Dr. Manders if the CT scan or the MRI reports of the brain would help corroborate or support the severity of Plaintiff's migraines. (AR 623). Dr. Manders responded that there was no documentation of micro vascular changes and stated, "No, . . . there's nothing on the MRI that is that could tell you anything about the headaches. . . ." *Id*. But the fact that an objective test does not offer information about the cause of Plaintiff's

headaches does not address any other possible cause nor does it negate her symptoms. Second, the ALJ noted that Dr. Manders testified that Plaintiff's history of aneurysm and clipping for aneurysm would have little impact on her alleged headache complaints. *Id*. But again, the fact that her headaches were likely not caused by her aneurysm does not negate other causes or her symptoms. This limited discussion of Plaintiff's headaches in a footnote to the credibility determination is not a "robust discussion of headaches," as asserted by the Commissioner. (ECF 21, p. 6).

In its prior order, the Court specifically directed the ALJ, on remand, to undertake the proper analysis of Plaintiff's headaches, and the ALJ failed to do so. This is a violation of the law of the case doctrine. Moreover, the ALJ's decision is once again not supported by substantial evidence because of the failure to properly consider the evidence of Plaintiff's headaches. As a result, remand is required. *See Indoranto*, 374 F.3d at 474 ("Notably absent from the ALJ's order is a discussion of how Indoranto's headaches and blurred vision affect her ability to work."); *Shauger*, 675 F.3d at 697-98 (finding that the ALJ failed to properly consider the relevant evidence in evaluating the plaintiff's headaches, including his daily activities, the timing and duration of the headaches, and the measures taken to treat the headaches). On remand, the Court suggests (and Plaintiff requests) that Plaintiff's case be assigned to a different ALJ. *See Travis v. Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993).

**B. Multiple Sclerosis**

Plaintiff argues that the ALJ erred in finding that Plaintiff did not have the medically determinable impairment of multiple sclerosis. However, Plaintiff has not met her burden of proving the existence of this impairment and the severity of the functional limitations caused by the impairment. *See* 20 C.F.R. § 416.920(a)(4)(i)-(iv).

At step two of the sequential analysis, the ALJ found that the alleged multiple sclerosis was not medically determinable. (AR 556). The ALJ noted that Dr. Manders, the impartial medical expert, testified that the record is without definitive diagnostic testing to support a diagnosis of MS. The ALJ cited 20 C.F.R. § 416.912, which places the burden of proof of an impairment on Plaintiff. The ALJ also found that Plaintiff had not offered any signs, symptoms, or laboratory findings to establish the physical impairment: "Despite what appear to be a more or less carry over, or historical diagnosis, as to MS the record is without any definitive diagnostic testing that would support said diagnosis (Testimony of Dr. Manders' at hearing)." (AR 556). The ALJ further noted that there is no record of treatment for MS, which was also discussed by Dr. Manders. *Id*. In a footnote to this analysis, the ALJ also commented that, even if she had found a medically determinable impairment of multiple sclerosis, "the record contains conspicuous abnormalities between the claimant's allegations of physical symptomology and clinical records that routinely document a lack of focal deficit (such as loss of motor, sensory, manipulative, or ambulatory ability)." (AR 556, n.1).

First, Plaintiff argues that her attorney offered "evidence" to counter the testimony of Dr. Manders that Plaintiff's CT scans were a reasonable basis to deny Plaintiff's MS diagnosis without the benefit of an MRI. The "evidence" consisted of articles that Plaintiff describes as explaining that MRIs are the preferred and proper technique for confirming a diagnosis of MS and that CT scans are not routinely used for that purpose and that, for some patients, an MRI does not demonstrate the presence of MS but that they are nevertheless judged clinically to have the disease. Plaintiff offered the articles to show that some individuals with aneurysm clips, which Plaintiff has, cannot undergo an MRI. However, Plaintiff did undergo an MRI with the clip. In April 2013, an MRI of the brain was entirely unremarkable, other than the aneurysm clip. (AR 1373). Plaintiff also underwent an MRI of the cervical spine in May 2013, which did not show any lesions. (AR 1371). Earlier, in 2008,

an MRI of the brain was unremarkable, with no evidence of lesions. (AR 232, 457, 561 n. 6). Plaintiff is correct that the ALJ did not discuss the post-hearing submission by Plaintiff's counsel. However, none of the submission was medical evidence of Plaintiff's own medical condition. The evidence of record supports the testimony of Dr. Manders and the conclusion of the ALJ that imaging did not show abnormalities or support a diagnosis of multiple sclerosis.

Plaintiff has the burden of proving that she has the medically determinable impairment of multiple sclerosis. Plaintiff does not point to any evidence in the record supporting a diagnosis of multiple sclerosis such as signs, other imaging, or clinical findings.

In her brief, Plaintiff asserts that she was diagnosed with MS. (ECF 16, p. 11 (citing (AR 1121, 1223, 1317, 1364, 1432, 1476, 1502, 1554, 1608))). However, none of these records contain the actual diagnosis and its basis; rather all of the records simply list or mention a historical diagnosis of multiple sclerosis. The record at page 1121 is the October 5, 2012 final report of a bone scan that includes Plaintiff's own report of a history of multiple sclerosis. The record at page 1223 is an April 23, 2013 aneurysm consultation, at which Plaintiff reported that she was "being worked up for lupus vs. MS." (AR 1223). The record at page 1317 is a December 5, 2012 office visit report from Dr. Daksha C. Vyas to whom Plaintiff was referred for complaints of weakness in the left leg, numbness in the arms and legs, and imbalance. (AR 1314). The report lists fifteen different "diagnoses," including multiple sclerosis, which appear to be reported by Plaintiff. (AR 1313, 1317). The record at page 1364 is similarly a report from Dr. Vyas for a follow up visit on November 13, 2014, for headaches and neck and back pain and contains the same history that lists multiple sclerosis. The records at pages 1432, 1476, 1502, and 1554, are treatment records from Dr. Okolocha from July 31, 2012, May 6, 2014, February 15, 2013, and September 18, 2014, respectively for treatment for things such as migraine, vomiting, medication refills, facial swelling, hospital follow

up, and a cough. Each record contains a list of diagnoses, including multiple sclerosis, on the "patient active problem list." Finally, the record at page 1608 is a January 9, 2015 CT cerebral angiogram report, which, at the end, lists multiple sclerosis as a diagnosis listed on the order for the scan from Dr. Vyas.

None of the records cited by Plaintiff is a treatment record in which Plaintiff is diagnosed with multiple sclerosis. Tellingly, Plaintiff string cites these pages of the administrative record without any narrative or description of the contents of the documents. There is no evidence explaining on what medical basis multiple sclerosis was included on the lists of diagnoses. There are no medical records to support the purported diagnosis. Nor, as argued by Plaintiff, *see* (ECF 16, p. 11), is the simple listing of multiple sclerosis as a diagnosis a medical "opinion" because it does not reflect a "judgment[] about the nature and severity of [her] impairment." 20 C.F.R. § 416.1527(a)(2) (defining a "medical opinion"). Notably, in the final report of Plaintiff's May 10, 2013 aneurysmal clipping, the treating doctor wrote that Plaintiff reported that she "[h]as been tested for MS and *states this was negative*. Currently being evaluated for possible lupus." (AR 1217) (emphasis added). Finally, Plaintiff does not identify any treatment that she was receiving for multiple sclerosis. Plaintiff has not met her burden of proving that she has the medically determinable impairment of multiple sclerosis.

Even if the ALJ erred in finding Plaintiff's alleged multiple sclerosis to be a non-medically determinable impairment, the error would be harmless because Plaintiff has not identified any additional effects of the purported impairment alone or in combination with other impairments that the ALJ did not consider in formulating the RFC. Notably, Plaintiff's limitations are already based on her neurological symptoms. Plaintiff has not shown what additional functional limitations the impairment of multiple sclerosis would have necessitated.

Plaintiff can only obtain disability benefits on account of symptoms or work-related limitations that are caused by a medically determinable impairment. 42 U.S.C. § 1382c(a); 20 C.F.R. § 416.929(c). Because substantial evidence supports the ALJ's finding that multiple sclerosis was not a medically determinable impairment, the ALJ did not need to further evaluate the MS.

### C. RFC Assessment

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* The "ALJ must also consider the combined effects of all the claimant's

impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

First, Plaintiff notes the medical records that she suffers from numbness, tingling, or parethesia in her extremities as well as decreased leg strength, difficulty balancing or walking, abnormal gait, increased leg and arm reflexes, and absent knee jerk. She further notes diagnoses of weakness of unknown etiology, parethesia, chronic lumbar radiculopathy, neuropathy, unspecified hereditary and idiopathic peripheral neuropathy, hereditary spastic paraplegia, and spasmodic torticollis. Plaintiff argues that, even if the ALJ found that she did not suffer from MS, the ALJ could not ignore these symptoms that can be attributed to her other diagnoses. However, the ALJ did not ignore these records. In finding that Plaintiff could perform a reduced range of sedentary work, the ALJ carefully reviewed the relevant medical records related to Plaintiff's physical impairments. (AR 561-63). Plaintiff does not acknowledge the ALJ's thorough discussion and treatment of the records. Nor does Plaintiff argue what additional limitations should be included in the RFC based on these impairments and symptoms or how the RFC does not account for them. Plaintiff has not shown that the RFC is not supported by substantial evidence as to these symptoms. Plaintiff also argues that she reported dizziness, syncope, black outs, and seizures. However, most if not all of the records she cites in support are related to her severe impairments and the ALJ's careful recitation of the record.

Plaintiff further notes that the record demonstrates consistent reports of back pain, neck pain, neck stiffness, and muscle spasms. Plaintiff notes that examinations revealed musculoskeletal tenderness as well as tenderness in her cervical and lumbar paraspinal muscles, reduced cervical spine range of motion, and decreased neck and deltoid strength. CT scans demonstrated moderate right foraminal narrowing at C6-7 and minimal disc bulging at L4-5. Plaintiff underwent numerous

injections, in various muscles, to attempt to alleviate this pain. Plaintiff was diagnosed with unspecified backache, lumbago, chronic low back pain, chronic neck pain and stiffness, cervical degenerative disc disease, myalgia, and chronic pain syndrome. Plaintiff argues that, despite all this evidence, the ALJ found her spinal disorders to be not severe at step two and that Plaintiff had not alleged difficulties due to spinal abnormalities. The Commissioner does not directly address this argument. On remand, the ALJ will have an opportunity in formulating the RFC to determine if Plaintiff has any limitations from her non-severe spinal impairments.

Next, Plaintiff argues that the ALJ erred by not explaining how she formulated Plaintiff's RFC in relation to her vision. The ALJ found that Plaintiff lost her vision in her right eye and suffered from right nerve palsy. (AR 555). In the RFC assessment, the ALJ found that Plaintiff could not perform work that requires fine, precise, or detailed visual acuity of small/microscopic objects but that she could exercise near and far acuity, see and handle medium to large objects, and avoid work place hazards. (AR 558). Plaintiff argues that the origins of these limitations is unclear because the doctors who opined on Plaintiff's vision proposed various limitations but not the exact limitations imposed by the ALJ. However, the RFC is an administrative decision reserved to the ALJ, and there is no requirement that the RFC be based solely on a medical opinion. 20 C.F.R. § 946(c); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."). In this case, the ALJ detailed the history of Plaintiff's vision impairment and noted that, despite poor vision in her right eye, Plaintiff retained relatively normal vision in her left eye. The ALJ properly considered all the relevant medical evidence, the opinion evidence (the ALJ did not reject all opinion evidence as Plaintiff suggests in her reply brief), and Plaintiff's testimony to formulate the RFC as to her vision. Plaintiff points to no evidence that she required more restrictive visual limitations.

In a related vein, Plaintiff argues that the ALJ's hypothetical question to the vocational expert regarding Plaintiff's vision did not match the RFC she ultimately gave Plaintiff and, thus, that the testimony is not reliable. However, a careful review of the hearing testimony shows that the ALJ asked the vocational expert to consider a person who could "see and handle medium to large objects" with no requirement of the use of "fine, detailed vision for like smaller or microscopic objects." (AR 649-50). Contrary to Plaintiff's assertion, the ALJ did not alter the hypothetical, and the vocational expert listed jobs that an individual with Plaintiff's RFC could perform. The only clarification by Plaintiff's counsel was in relation to the cashier job and whether the ability to distinguish between coins implicated "small items." (AR 654). And, the vocational expert reaffirmed his testimony that someone with Plaintiff's visual limitations of no requirement to see small or microscopic objects could perform the surveillance system monitor job. The ALJ did not find that Plaintiff could perform the cashier job, which was a light job; the ALJ found an RFC for a limited range of sedentary work and that Plaintiff could perform the sedentary job of surveillance system monitor based on the vocational expert's testimony. Thus, on this record, there is no error.

Next, Plaintiff argues that the ALJ did not properly consider her diagnoses of depression and anxiety. (Pl. Br. 17-19). The evidence of record shows that Plaintiff reported feeling depressed, had thoughts of suicide, felt nervous, anxious, and panicky, had daily tearfulness, felt helpless/hopeless, lacked energy, and had loss of interest. Examinations revealed slow, soft speech, lethargic appearance, depressed mood, flat or bland affect, and anxious appearance. The non-examining consultant, Dr. Kennedy, opined that Plaintiff's depression caused mild difficulties in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. At step two, the ALJ found that Plaintiff's depression was non-severe and agreed with Dr. Kennedy's opinion of mild limitations, but, in formulating the RFC, the ALJ did not consider

whether her depression and anxiety caused any limitations. In assessing the evidence at step two, the ALJ was incorrect that Plaintiff had not received any specific mental health treatment other than of medication by her primary care physician. In fact, Plaintiff received routine mental health treatment from psychiatrist Dr. Paul Hannah from April 2011 through September 2014. (AR 918-28). On remand, the ALJ will have an opportunity to consider the treatment records of Dr. Hannah as well to explicitly consider whether Plaintiff's mental health impairments cause any limitations in formulating the RFC.

### D. Treating Physician Opinion

On January 24, 2012, Plaintiff's treating primary care physician, Dr. Paul Okolocha, opined that Plaintiff suffered from recurrent headaches, blurred vision, prior aneurysm, hand, feet, and leg numbness, and syncopal episodes with dizziness and used a walker to ambulate. (AR 1580). Dr. Okolocha indicated that Plaintiff had been unable to work since 2008 and remained unable to work in any capacity. *Id*.

In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 404.1527(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. § 405.1527(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id*. § 405.1527(e)(2).

An ALJ must give the opinion of a treating doctor controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *see also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). In weighing all opinion evidence, the ALJ considers several factors and "must explain in the decision the weight given" to

each opinion. 20 C.F.R. § 404.1527(e)(2)(ii), (iii); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th 2008). When a treating physician's opinion is not given controlling weight, the ALJ must nevertheless consider certain factors to determine how much weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability (such as medical signs and laboratory findings), and specialization. 20 C.F.R. § 404.1527(c)(2)-(5).

The ALJ did not acknowledge, much less discuss or weigh, Dr. Okolocha's opinion. Rather, the ALJ incorrectly stated that "no other physician, *treating or otherwise*, has opined as to greater limitations than those assessed herein." (AR 560) (emphasis in original). The Commissioner argues that the January 24, 2012 letter is nothing more than a finding on the ultimate question of disability reserved for the Commissioner and, thus, it was harmless error for the ALJ not to have mentioned or weighed the opinion. *See* 20 C.F.R. § 416.927(e)(1); *Mellott v. Commissioner of Social Security*, Cause No. 3:11-CV-92, 2012 WL 645915, at *4 (N.D. Ind. Feb. 28, 2012) (finding harmless error when the ALJ did not weigh an opinion that Plaintiff "does not appear to be a suitable workplace candidate at this time").

The letter is not simply a finding on the ultimate question of disability. Dr. Okolocha writes that Plaintiff has been unable to work since 2008, noting that Plaintiff has "recurrent headaches and blurred vision and was diagnosed with an aneurysm in 10/2009." He then noted that her "ongoing symptoms include hand, feet and leg numbness; syncopal episodes and dizziness." Finally, he explained that "[s]he currently uses a walker to facilitate ambulation." (AR 1587). He then offered that she is not able to work in any capacity. Thus, Dr. Okolocha offered diagnoses and symptoms in support of his opinion. As discussed in Part A above, Dr. Okolocha consistently treated Plaintiff over a period of years for her ongoing headaches. The ALJ's failure to consider and weigh this

opinion of the treating physician under the applicable standards is reversible error. *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008). This failure is especially notable in light of Dr. Okolocha's inclusion of headaches as a reason Plaintiff cannot work and the Court's September 30, 2013 Opinion and Order requiring the ALJ to specifically consider and discuss Plaintiff's headaches, which, as explained above, the ALJ did not do. If the ALJ had undertaken a proper analysis of Plaintiff's headaches, she would have discussed this letter from the treating physician.

### E. Credibility Determination

On March 28, 2016, Social Security Ruling 16-3p became effective and issued new guidance regarding the evaluation of a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms. *See* SSR 16-3p, 2016 WL 1237954 (Mar. 28, 2016). Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." However, SSR 16-3p is not retroactive; therefore, the "credibility determination" in the ALJ's November 4, 2015 decision is governed by the standard of SSR 96-7p.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)      The individual's daily activities;
(2)      Location, duration, frequency, and intensity of pain or other symptoms;
(3)      Precipitating and aggravating factors;
(4)      Type, dosage, effectiveness, and side effects of any medication;
(5)      Treatment, other than medication, for relief of pain or other symptoms;
(6)      Other measures taken to relieve pain or other symptoms;
(7)      Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler*, 688 F.3d at 310-11 (quotation marks omitted) (quoting *Skarbek*, 390 F.3d at 504-05); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff argues that the credibility assessment was legally insufficient. Because this case is being remanded on other grounds and because the Court is suggesting that the case be assigned to a different ALJ, a detailed review of the credibility determination under the former standard is unnecessary. However, the Court notes that neither of the substantive reasons given by the ALJ—purportedly inconsistent statements about the frequency of headaches and Plaintiff's work history—are bases to impugn Plaintiff's credibility.

First, the ALJ discounted Plaintiff's credibility based on what the ALJ described as inconsistent reports by Plaintiff regarding the frequency of her headaches. (AR 560). The ALJ found that it was inconsistent for Plaintiff to report no headache-free days in June 2010 but in November 2009 to report some headache free days. (AR 560 (citing (AR 134, 177))). Those reports were six months apart. A longitudinal view of the record demonstrates that the frequency of Plaintiff's headaches fluctuated. In September 2009, Plaintiff started to report consistent headaches, but only about twice each month. By February 2010, Plaintiff was having headaches daily, which continued

into November 2010 (and necessarily included June 2010). As the ALJ did not discuss the records of Plaintiff's headaches, there is no context for understanding Plaintiff's reports in November 2009 and June 2010 singled out by the ALJ. In 2011, Plaintiff reported less frequent headaches because she was taking Topamax, which was helping, but, in 2012, Topamax stopped providing relief and she began having more frequent headaches. *See* (AR 1053, 1163, 1167, 1202). By May 2012, Plaintiff was suffering five headaches per week. Plaintiff testified at the hearing that she has headaches five out of seven days a week. (AR 593-94). When viewed as a whole, there is no inconsistency. There was no medical basis for the ALJ to find Plaintiff less than credible because she reported a different frequency of headaches six months apart.

Second, the ALJ doubted Plaintiff's inability to work, noting that Plaintiff had worked "infrequently and sporadically" prior to her alleged onset of disability, which the ALJ stated "indicates that her continuing unemployment may be secondary to issues other than her alleged medical symptomology." (AR 560). However, the ALJ speculated as to the reason Plaintiff has a poor work history, with statements such as "it does raise the *possibility* that the claimant's inactive work history, documented even prior to her alleged onset date, is secondary to factors outside of her personal health." *Id.* (emphasis added). The ALJ speculated that Plaintiff stopped working to care for her child, but offers no citation to the record. This speculation is not evidence. In fact, the ALJ noted that Plaintiff testified that she did not remember why she stopped working in 2001. Notably, Plaintiff did not apply for disability until after her first aneurysm surgery, which supports her contention that she did not apply for disability benefits until her medical condition necessitated it. Plaintiff also notes that the record demonstrates that she had significant help caring for her son, who has Down Syndrome, by friends and family, that someone was in the home with her and her son at all times, and that she does not care for her son physically. (AR 585, 589, 607). Even if Plaintiff was

caring for her son, it is unclear how that undermines Plaintiff's reported symptoms and limitations or demonstrates an ability to engage in full-time, competitive employment.

On remand, the ALJ assigned to this case will have an opportunity to assess Plaintiff's subjective symptoms under the standard set out in SSR 16-3p.

### F. Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required for the ALJ to properly consider Plaintiff's RFC.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** the case for further proceedings. The Court suggests that, upon remand, Plaintiff's case be assigned to a different ALJ.

So ORDERED this 24th day of March, 2017.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT